UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Ali Shahrokhi, | Case No.: 2:20-cv-01623-JAD-NJK |
| Plaintiff | |
| v. | **Order Lifting *Younger* Stay and Denying Motions to Amend the Complaint and Substitute a Defendant** |
| Matthew Harter, et al., | |
| Defendants | [ECF Nos. 135, 141] |

Ali Shahrokhi sues family-court Judge Matthew Harter; the mother of his child, Kizzy Burrow; and Burrow's attorneys Thomas Standish and Philip Spradling, arguing that they conspired to violate his constitutional rights during the state-court child-custody battle between Shahrokhi and Burrows.[1] I stayed this case two years ago under *Younger v. Harris*[2] because those family-court proceedings were still ongoing. Shahrokhi now moves to lift that stay and reopen this case.[3] He also asks the court to grant him leave to file a more than 50-page amended complaint that adds 14 defendants, including judges, court staff, attorneys, Nevada's attorney general, the Clark County district attorney, and Clark County itself.[4] And as Judge Harter is now deceased,[5] Shahrokhi moves to replace him as a defendant with either his widow or his not-yet-established estate.[6]

---

[1] ECF No. 1 (complaint).
[2] *Younger v. Harris*, 401 U.S. 37 (1971).
[3] ECF No. 135.
[4] ECF No. 135-1.
[5] ECF No. 137 (1/23/23 suggestion of death on the record).
[6] ECF No. 141.

Because it appears that the family-court proceedings terminated last May when the Supreme Court of Nevada affirmed Judge Harter's myriad rulings,[7] I grant Shahrokhi's request to lift the stay and reopen this case. But because his proposed amendment would be futile, I deny his motion for leave to amend. Finally, because Shahrokhi has not identified a proper substitute party for his claims against Harter, I deny his request for substitution without prejudice to his ability to renew that motion once he is able to identify such a substitute.

## Discussion

**A.    The conclusion of the family-court proceedings warrants lifting the *Younger* stay and reopening this case.**

In June 2021, on Judge Harter's motion, I stayed this case under *Younger*, reasoning that this federal court's wading into Shahrokhi's family-court matter "would only implicate the 'serious' concerns of 'federal judicial interference with state civil functions.'"[8] The *Younger* motion was not the only one then pending; all of the defendants had moved to dismiss on various bases, including that Judge Harter is judicially immune from suit, and that Shahrokhi's claims are inadequately pled under Federal Rule of Civil Procedure 12(b)(6) and barred by Nevada's anti-SLAPP law, Nevada Revised Statute (NRS) § 41.660.[9] Because I granted the motion to abstain and stay, I denied the remaining motions "without prejudice to their refiling within 20 days of the order lifting the stay."[10]

---

[7] *Shahrokhi v. Burrow*, Sup. Ct. Nev. Case Nos. 81978, 82245, and 83726 (reviewing rulings in Eighth Judicial District Court Case No. D581208). This court takes judicial notice of this disposition and the status of the Supreme Court of Nevada's docket.

[8] ECF No. 123 (quoting *Moore v. Sims*, 442 U.S. 415, 423, 429 (1979)).

[9] ECF Nos. 15, 28 (motions to dismiss).

[10] ECF No. 123 at 7–8.

2

Shahrokhi represents that the "[s]tate[-]custody litigation has been finalized by the Supreme Court of Nevada as of May 12, 2022," and he asks to reopen this case.[11] The defendants do not dispute this history, and this court's independent review of the Supreme Court of Nevada's docket in case numbers 81978, 82245, and 83726 confirms that the Court affirmed the district court's judgments in an extensive Order of Affirmance dated May 12, 2022.[12] Because it appears that the basis for *Younger* abstention has abated, I grant Shahrokhi's request to lift the stay and reopen this case.[13] Any motion that was denied without prejudice when the stay was entered may be renewed within the next 20 days.

**B.     Motion to substitute a defendant under FRCP 25**

When a defendant dies during the course of litigation, Federal Rule of Civil Procedure 25(a)(1) gives the plaintiff the opportunity to replace that deceased defendant with his "successor or representative" if "the claim is not extinguished" or abated as a result of the death.[14] A Rule 25 motion to substitute must be made "within 90 days after service of a statement noting the death," and it must be served "on nonparties as provided in Rule 4."[15] With its permissive "may" construction, the rule affords the court discretion in ruling on such a motion.[16]

Counsel for Judge Harter filed a suggestion of his client's death in the record on January 23, 2023, triggering Rule 25's 90-day deadline for substitution.[17] Shahrokhi promptly filed his

---

[11] ECF No. 135.

[12] *See* ECF No. 145-2 (order of affirmance).

[13] ECF No. 135.

[14] Fed. R. Civ. P. 25(a)(1).

[15] Fed. R. Civ. P. 25(a)(1) & (3).

[16] *See* Fed. R. Civ. P. 25(a)(1) ("If a party dies and the claim is not extinguished, the court ***may*** order substitution of the proper party.") (emphasis added).

[17] ECF No. 137 (noting Harter's November 9, 2022, passing).

Rule 25 motion the following week.[18] In that motion, Shahrokhi asks the court to replace Judge Harter with his widow Brandie Grilz Harter or with Judge Harter's estate.[19]

"Under the common law the death of the wrongdoer caused an abatement of any cause of action in tort against him."[20] But as Shahrokhi correctly notes, Nevada's survival statute, NRS § 41.100, saves claims from abatement when a proper substitute defendant can be located: "[e]xcept as otherwise provided in this section, no cause of action is lost by reason of the death of any person, but may be maintained . . . against the person's executor or administrator."[21] Although exemplary or punitive damages can't be recovered, "[i]n an action against an executor or administrator" of the estate of a deceased defendant, the plaintiff may still pursue any other "damages . . . [that c]ould have been recovered against the decedent if the decedent had lived."[22]

Key to the success of a Rule 25 motion is whether the party to be substituted in for the deceased defendant is a proper party. "In the typical case the proper party 'would be the representative of the decedent's estate who has been appointed under state law.'"[23] "Because the purpose of Rule 25(a)(1) is to protect the estate of the decedent, district courts must ensure [that]

---

[18] ECF No. 141. It does not appear that Shahrokhi served the motion on Judge Harter's widow as the rule requires. But because I deny the motion for other reasons, I don't evaluate the impact of this deficiency.

[19] *Id*. at 4.

[20] *Estes v. Riggins*, 232 P.2d 843, 844 (Nev. 1951).

[21] Nev. Rev. Stat. § 41.100.

[22] *Id*.; *see also Allen v. Anderson*, 562 P.2d 487, 489 (1977) ("With consistent logic, by the great weight of authority, punitive damage claims do not survive the death of the tortfeasor, and cannot be sought from the deceased tortfeasor's estate.").

[23] *In re Baycol Prod. Litig.*, 616 F.3d 778, 788 (8th Cir. 2010) (quoting 6 James Wm. Moore et al., Moore's Federal Practice ¶ 25.12[3] (3d ed. 2010)).

only 'those individuals who can adequately represent the interests of the deceased party' are substituted under the Rule."[24] State law determines who is a proper party for substitution.[25]

The Supreme Court of Nevada explained just who qualifies as a Rule 25 "successor or representative" defendant in *Gonor v. Dale*[26]:

> NRS 41.100(1) [allows] a survival action [to] be maintained by or against the decedent's executor or special administrator. An "executor" is defined as "a person nominated in a will and appointed by the court to execute the provisions of the will and administer the estate of the decedent." An "administrator" is defined as "a person not designated in a will who is appointed by the court to administer an estate." Thus, **the proper party who may take the place of the deceased party** within the meaning of [Nevada's identical Rule 25(a)(1)] **includes either an individual named in the will of the deceased party and appointed by the court to administer the estate or an individual appointed by the court to do the same. . . . [A]n estate is not a proper party**.[27]

Either way, under Nevada law, the proper party to substitute in for a deceased defendant under Rule 25(a)(1) must be a *court-appointed* representative.[28]

Neither of the parties that Shahrokhi proposes to stand in Judge Harter's shoes is a proper party for Rule 25 substitution. As the *Gonor v. Dale* court held, "an estate is not a proper party," so this court cannot grant Shahrokhi's request to substitute Judge Harter's estate in his stead. And Shahrokhi has not shown that Judge Harter's widow Brandi Grilz Harter is the court-

---

[24] *Id*. (quoting *Sinito v. U.S. Dep't of Justice*, 176 F.3d 512, 516 (D.C. Cir. 1999)).

[25] *Id*. at 787–88 (citing *U.S. for Use of Acme Granite & Tile Co. v. F.D. Rich Co.*, 441 F.2d 1143, 1144 (9th Cir. 1971)).

[26] *Gonor v. Dale*, 432 P.3d 723, 726 (Nev. 2018).

[27] *Id*. (internal citations omitted) (emphasis added).

[28] *Id*.

appointed executor or administrator of his estate either, so this court cannot substitute her in as a defendant under Rule 25 either. So Shahrokhi's motion is denied.[29]

The court is empathetic to the position that this defendant's death has left Shahrokhi in: Rule 25's 90-day substitution clock is ticking away, yet the identity of a proper substitute party remains unknown. As Harter's counsel stated in his response to the substitution motion, "there is no record of a probate action concerning Judge Harter's estate nor was counsel aware of any representative for an estate. Currently, Widow Harter is a stay-at-home mom to her minor children."[30] So there may not now or ever be a proper party for substitution in this case. But at this point, Shahrokhi has not identified a proper party to stand in Judge Harter's shoes and defend against Shahrokhi's claims, so the motion to substitute is denied.

**C.    Because the proposed amendment would be futile, Shahrokhi's motion for leave to amend is denied.**

Lastly, Shahrokhi moves for permission to file an amended complaint to add claims against more Eighth Judicial District Court judges, Four Nevada Supreme Court justices, Nevada's Attorney General, the Clark County District Attorney, Judge Harter's judicial executive assistant, a family-court law clerk, Clark County itself, numerous additional lawyers who have represented Shahrokhi's adversaries in the many actions he has filed in state and federal court, and Burrow's boyfriend, for a total of 21 named defendants and another fictitious does 1-50.[31] He argues that this amended complaint, which is 57 pages long and purports to

---

[29] Although Judge Harter's counsel, appearing on behalf of Brandie Harter, argues that substitution would be improper because Shahrokhi's claims are meritless, that is not a proper consideration under Rule 25.

[30] ECF No. 145 at 2.

[31] ECF No. 135.

assert ten civil-rights claims under 42 U.S.C. § 1983 for these defendants' various roles in his custody dispute with the mother of his child,[32] will clarify the dispute between the parties and will not cause any prejudice."[33]

The motion for leave to amend is a single page long and offers no other justification for expanding this case to include these defendants and the claims against them. The three lawyers that are already parties to this action oppose the motion.[34] They contend that the existing claims are already meritless and should be dismissed as a result of the motions that were pending when this case was stayed, and which will be refiled when the stay is lifted; the proposed amendment is retaliatory and frivolous; and these proposed claims are recycled from Shahrokhi's other unsuccessful cases in this district.[35] In his reply brief, Shahrokhi offers a far more robust, 13-page briefing of his leave request.[36] There he explains that all of the defendants he proposes by this amendment "have conspired among each other to cause harm and deprivation" to him and his son "and it is time for the plaintiffs to be vindicated for all that they have suffered."[37] He

---

[32] ECF No. 135-1.

[33] ECF No. 135 at 2. A clear pattern has emerged from Shahrokhi's many filings in this court. Unhappy with the results of his custody dispute in the Eighth Judicial District Court, he sued the mother of his child, her lawyers, and the judge who ruled against him. Then he sued the lawyers who represented each of those defendants. Then every state-court judge who has touched his claims—from the trial court to the intermediate court of appeals to the Supreme Court of Nevada—and any lawyer that represented them. *See infra note* 43. Now, unhappy with my previous order staying this case under *Younger*, Shahrokhi appears to presage that he will continue this trend and expand his list of targets to include the judges assigned to this case, too, as he states in his reply brief that "Shahrokhi alleges, on the record . . . that the federal judge and federal magistrate presiding over this case are corrupt." ECF No. 142 at 6.

[34] ECF No. 138.

[35] *Id.*

[36] ECF No. 142.

[37] *Id.* at 4.

7

calls these new defendants "bottom-feeder criminals" who have "taken advantage of their positions of power and authority to harm" Shahrokhi and his son.[38]

The fact that Shahrokhi waited until his reply brief to offer substantive reasons for his leave request would be reason enough to deny it. As the Ninth Circuit Court of Appeals explained in *Zamani v. Carnes*, a "district court need not consider arguments raised for the first time in a reply brief."[39] This rule is in place because the practice of raising arguments for the first time in replies deprives the opposing party of a fair opportunity for response—and deprives the court of balanced and informed briefing.

But even considering the entirety of Shahrokhi's reply-brief arguments, his leave request must be denied. "Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility or where the amended complaint would also be subject to dismissal."[40] And here, it appears that amendment would be an exercise in futility because the additions that Shahrokhi proposes would be subject to dismissal. Dismissal is required when a claim lacks facial plausibility, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[41] Mere recitals of a claim's elements, supported by only conclusory statements, are insufficient.[42]

---

[38] *Id*. at 5.

[39] *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

[40] *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) (quoting *Pisciotta v. Teledyne Industries, Inc.,* 91 F.3d 1326, 1331 (9th Cir. 1996), and *Saul v. United States,* 928 F.2d 829, 843 (9th Cir. 1991)).

[41] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[42] *Iqbal*, 556 U.S. at 678–79.

Shahrokhi's claims against these proposed new defendants are supported, at best, by only conclusory statements and buzzwords that fail to state any plausible claim for relief. Although he offers pages of factual allegations recounting the history of his custody litigation through its many levels and iterations, those facts show nothing more than a heavily litigated family-court matter rife with procedures and decisions that Shahrokhi is very unhappy with. He quotes heavily from the proceedings and related filings and offers countless criticisms of the actions of the courts and their staff—from phone calls, to timing, to the presence of marshals during hearings, to the language used in orders, to the lack of evidence during his three-day trial in 2020, all compounded by the Nevada Supreme Court's affirmance of the custody orders and Attorney General Ford's refusal to intervene.[43] Shahrokhi's allegations indicate that he perceives every judicial decision that did not favor him, and every court procedure that he dislikes, to be a constitutional violation; and he accuses every lawyer, judge, and court staffer that has touched one of his matters, along with Nevada's Attorney General and the Clark County District Attorney, of conspiring to deprive him of due process and a multitude of other rights.

The claims against the proposed new judiciary defendants (Judges Throne and Henderson; Justices Bell, Parraguirre, Hardesty, and Herndon; hearing master Norheim; and court staff Fernandez and Filon) would be an exercise in futility because they are barred by the doctrine of immunity. Judicial officers are entitled to absolute immunity from civil liability for

---

[43] *See generally* ECF No. 135-1 at 1–28. Whether this court has subject-matter jurisdiction over these claims in light of the *Rooker-Feldman* doctrine is also dubious. *See Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003) (explaining that, "[i]f claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules, then the federal complaint must be dismissed for lack of subject matter jurisdiction," and this includes "challenges" that "allege that the state court's action was unconstitutional").

"acts committed within their judicial jurisdiction."[44]  This immunity applies to civil actions for damages as well as declaratory or equitable relief.[45]  Although it "covers only those acts [that] are 'judicial' in nature," judicial officers "will not be deprived of immunity because the action [they] took was in error, was done maliciously, or was in excess of [their] authority; rather [they] will be subject to liability only when [they] acted in the clear absence of all jurisdiction."[46]  This absolute immunity doesn't just cover judges but extends to "certain others who perform functions closely associated with the judicial process," including, but not limited to, court personnel like law clerks, judicial assistants, and hearing masters.[47]  Although Shahrokhi characterizes the conduct in his matters by the judges and court staff as not judicial in nature or outside the scope of their jurisdiction, he does not allege any facts that would indicate that to be the case for any of the defendants he seeks to add by this amendment.  So permitting the proposed claims against additional judges and court staff would be futile.[48]

---

[44] *Pierson v. Ray*, 386 U.S. 547, 554 (1947); *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004) (citing, *inter alia*, *Stump v. Sparkman*, 435 U.S. 349, 364 (1978)).

[45] *Mullis v. Bankr. Ct. for the Dist. of Nev.*, 828 F.2d 1385, 1394 (9th Cir. 1987).

[46] *O'Neil v. City of Lake Oswego*, 642 F.2d 367, 369 (9th Cir. 1981) (citing *Stump*, 435 U.S. at 360–61).

[47] *Moore v. Brewster*, 96 F.3d 1240, 1244–45 (9th Cir. 1996) (cleaned up); *McCann v. Taleff*, 828 F. App'x 461, 462–63 (9th Cir. 2020), *cert. denied*, 142 S. Ct. 222 (2021) (identifying that judicial assistants are entitled to absolute quasi-judicial immunity); *Olsen*, 363 F.3d at 923 (extending judicial immunity to "agency representatives performing functions analogous to those" of "a judge").

[48] Some of these claims also have already been dismissed in other suits that Shahrokhi filed.  *See, e.g.*, *Shahrokhi v. Hardesty, et al.*, Case No. 2:21-cv-02251-RFB-VCF (dismissing claims against Supreme Court of Nevada Justice Hardesty as barred by judicial immunity); *Shahrokhi v. Harter, et al.*, Case No. 2:21-cv-01126-RFB-NJK (dismissing claims against Standish, Spradling, Burrow, Pearson, and other lawyers based on general prohibition against claim splitting); *Shahrokhi v. Ochoa, et al.*, Case No. 2:21-cv-00483-APG-NJK (claims against Nevada Attorney General Aaron Ford dismissed for failure to state a claim); *Shahrokhi v. Truby, et al.*, Case No. 2:21-cv-00358-KJD-EJY (claims against Ford dismissed); *Shahrokhi v. Tao, et al.*, Case No. 2:20-cv-02346-GMN-VCF (claims against all judges on the Nevada Court of Appeals dismissed based on absolute immunity); *Shahrokhi v. Harter, et al.*, Case No. 2:20-cv-01019-

The allegations against the proposed new private attorney defendants (Ruiz and Garin) and Burrow's boyfriend Pearson also fail to state any plausible claim. Shahrokhi's civil-rights claims against them under 28 U.S.C. § 1983 fail because Shahrokhi has not pled any facts to show that these private persons are state actors subject to suit under this statute. As the Ninth Circuit held in *Dennis v. Sparks*, "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with a judge."[49] It is only when private parties "corruptly conspire" with a judge in connection with unlawful conduct that they are "acting under color of state law."[50] And although Shahrokhi offers many conclusory assertions about corruption, collusion, and conspiracies, he pleads no facts to support such a theory.

The facts alleged in this amended complaint also fail to state any claim against the remaining defendants. The basis for Shahrokhi's suit against Nevada Deputy Attorney Generals Steven Shevorski and Sabrena Clinton is that they "filed into the Nevada federal case No. 2-21-cv-01126, [a]sking the federal judge to declare Shahrokhi a vexatious litigant," which Shahrokhi imagines was "an attempt by these two defendants to violate Shahrokhi's First Amendment right to petition the courts under duress, so the state and the state judges will not be exposed for their corruptions."[51] Shevorski and Clinton were counsel of record for Judge Harter in that federal

---

APG-VCF (claims against Judge Bell, Clark County, the state, and Nevada Court of Appeals Judge Gibbons dismissed); *Shahrokhi v. Throne*, 2:22-cv-1-JAD-VCF (finding claims against Judge Throne barred by absolute immunity and declaring Shahrokhi a vexatious litigant). Permitting Shahrokhi to reassert those claims would be duplicative, a waste of judicial resources, and potentially run afoul of claim-preclusion and law-of-the-case concerns.

[49] *Dennis v. Sparks*, 449 U.S. 24, 29 (1980) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1966)).

[50] *Id.*

[51] ECF No. 135-1 at 25 (cleaned up).

1 case—one of nearly a dozen filed by Shahroki in an attempt to challenge the rulings in his
2 custody case. That vexatious-litigant motion was granted, and Shahrokhi was declared by this
3 court to be a vexatious litigant subject to pre-filing requirements.[52] Because "the doctrine of
4 absolute immunity protects . . . defendant attorneys . . . if their allegedly improper conduct was
5 'intimately associated with the judicial phases' of" a lawsuit,[53] and the allegations against
6 Shevorski and Clinton suggest that their conduct was intimately associated with that federal suit,
7 Shahrokhi has not stated a viable claim against them.

The allegations against Attorney General Ford are that NRS § 125C.007, which
9 establishes the factors for a family-court judge to weigh in determining whether to grant a parent
10 permission to locate, "is unconstitutional" and Ford knew it, but he "has refused to intervene" in
11 Shahrokhi's case and thus "continue[s] to deprive Shahrokhi and his [son] . . . of their
12 constitutional rights and familial association. Ford also conspires with others to enforce void
13 orders."[54] These allegations do not state a viable claim for relief. The same is true of the
14 similarly conclusory allegation against Clark County District Attorney Wolfson that "he
15 continues to conspire with defendants trying litigants on criminal statutes in civil proceedings
16 with no underlying indictments in family courts stating there is no jail time, so it is perfectly fine
17 whereas such actions are violating Shahrokhi's due process clause to notice, jury trial[,] and
18 having an attorney present in a criminal proceeding."[55] Based on the plainly insupportable legal
19 notion that Shahrokhi should have been afforded criminal-defendant rights under the Fourth,

---

[52] *See Shahrokhi v. Throne*, 2:22-cv-1-JAD-VCF, at ECF No. 21.

[53] *Fry v. Melaragno*, 939 F.2d 832, 836 (9th Cir. 1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).

[54] ECF No. 135-1 at 22.

[55] *Id*. at 25–26.

Sixth, Eighth, and Fourteenth Amendments in his family-court child-custody proceeding, this theory fails to support any plausible claim for relief. And because all the claims against the newly proposed individual defendants fail to state a claim, Shahrokhi's *Monell v. Department of Social Services of New York* claim against Clark County[56] similarly fails. So Shahrokhi's motion for leave to amend is denied.

## Conclusion

IT IS THEREFORE ORDERED that Shahrokhi's request to lift the stay and reopen this case is GRANTED. **The Clerk of Court is directed to lift the stay. Any motion that was denied without prejudice when the stay was entered will be considered timely reasserted if it is refiled within the next 20 days.**

IT IS FURTHER ORDERED that Shahrokhi's motions for leave to amend and to substitute a party **[135 and 141] are DENIED**.

_____
U.S. District Judge Jennifer A. Dorsey
Dated: April 6, 2023

---

[56] *Id*. at 27–28.