# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Ali Shahrokhi, | Case No.: 2:20-cv-01623-JAD-NJK |
| Plaintiff | |
| v. | **Order Granting Motions to Dismiss and Closing Case** |
| Mathew Harter, et al., | [ECF Nos. 151, 153, 172, 175, 177, 178, 180, 184, 188, 199, 202, 207, 209] |
| Defendants | |

Ali Shahrokhi sues his family-court judge, the mother of his child, and her attorneys, theorizing that they conspired to violate his constitutional rights during the state-court custody proceedings in which the mother was awarded sole custody and permitted to move the child to Oregon.[1]  This case was stayed while the state-court case worked its way through the appellate process.  When the Nevada Supreme Court affirmed, I lifted the stay.  In the meantime, the family-court judge passed away, I declared Shahrokhi a vexatious litigant in one of the other nine federal actions he's filed over those custody proceedings,[2] all defendants have moved to dismiss this case, and Shahrokhi has filed nearly a dozen more motions.  Because I find that Shahrokhi's claims are barred either by judicial immunity or Nevada's Anti-SLAPP statute, I grant the defendants' motions to dismiss and close this case.

---

[1] ECF No. 1 (complaint).

[2] *See Shahrokhi v. Hardesty, et al.*, Case No. 2:21-cv-02251-RFB-VCF; *Shahrokhi v. Harter, et al.*, Case No. 2:21-cv-01126-RFB-NJK; *Shahrokhi v. Harter, et al.*, Case No. 2:21-cv-00557-APG-BNW; *Phillips, et al. v. Ochoa, et al.*, Case No. 2:21-cv-00483-APG-NJK; *Phillips, et al. v. Truby, et al.*, Case No. 2:21-cv-00358-KJD-EJY; *Shahrokhi v. Tao, et al.*, Case No. 2:20-cv-02346-GMN-VCF; *Phillips, et al. v. Duckworth, et al.*, 2:20-cv-02345-RFB-NJK; *Shahrokhi v. Harter, et al.*, Case No. 2:20-cv-01623-JAD-NJK; *Shahrokhi v. Harter, et al.*, Case No. 2:20-cv-01019-APG-VCF.

**Background**

Shahrokhi lost his 2018 custody battle[3] against Kizzy Burrow, the mother of his child, before Eighth Judicial District Court Judge Mathew Harter, and he blames that loss on a massive conspiracy between Burrow, her lawyers Thomas Standish and Philip Spradling, and most of the judges and courthouse employees in Nevada.  Shahrokhi has been deemed a vexatious litigant in Nevada's state[4] and federal[5] court systems for the dozens of harassing and frivolous actions he's filed to promote this conspiracy theory.[6]  Running through all of his actions are the same threads:

- He sues the lawyers who've dared oppose him;

- He sues or moves to disqualify the judges who've ruled against him;

- He labels all the lawyers as corrupt, unethical, and criminal;

- Every judge is biased, on the take, arrogant, and misbehaving—or just stupid;

- All the evidence against him is fraudulent;

- Any order adverse to him is illegal; and

- Every decision that doesn't go his way was performed in excess of the court's jurisdiction and in violation of his constitutional rights.

---

[3] The Supreme Court of Nevada affirmed the district court's custody determination in May 2022 in *Shahrokhi v. Burrow*, Case Nos. 81978, 82245, and 83726.  *See* Order of Affirmance at ECF No. 153-1.

[4] *Shahrokhi v. Eighth Jud. Dist. Ct.*, 508 P.3d 418, 2022 WL 1301864, *1 (Nev. 2022) (unpub.) ("the district court found that petitioner's filings were intended to harass, to cause unnecessary delay, and to increase the cost of litigation for the real party in interest and lacked an arguable legal or factual basis"); *Shahrokhi v. Burrow*, 509 P.3d 602, 2022 WL 1509740, *1 n.2 (Nev. 2022), *cert. denied*, 143 S. Ct. 1027 (2023) ("the record belies Ali's arguments that the district court . . . improperly deemed him a vexatious litigant.").

[5] *Shahrokhi v. Throne et al.*, Case No. 2:22-cv-00001-JAD-NJK, ECF No. 21.

[6] As Shahrokhi himself explains it, "If Shahrokhi were to separate all of these lawsuits for constitutional violations and clear absence of all jurisdiction, there would be over 100 different lawsuits against all of these parties."  ECF No. 162 at 8.

This case is no exception.  The introduction to Shahrokhi's complaint previews that this is a civil-rights action against Burrow, Standish, Spradling, and Judge Harter in which he "claims [d]efendants conspired with a state[-]court judge and acted under color of state law to deprive [Shahrokhi] and [h]is minor of their Fourteenth Amendment right to due process of law."[7] Shahrokhi captions his four claims for relief as due-process violations, negligence, intentional infliction of emotional distress, and common-law conspiracy.[8]  Having become keen to the rules surrounding judicial immunity from the numerous dismissals of his suits on that basis,[9] he claims in that same introduction that "[Judge] Harter's actions are not entitled to judicial immunity" because he "acted in absence of any jurisdiction whatsoever in issuing VOID Orders."[10]

Attorneys Standish and Spradling bring a special motion to dismiss this suit as an illegal, retaliatory SLAPP suit,[11] and Burrow joins in that motion.[12]  They argue that Shahrokhi's claims against them are based on truthful statements made during Burrow's family-court litigation against him, which are shielded from suit by Nevada's Anti-SLAPP statute, codified at NRS 41.635 et seq.[13]  They add that Shahrokhi's claims are subject to dismissal for the additional

---

[7] ECF No. 1 at 2.

[8] *See generally id.*

[9] *See Shahrokhi v. Throne*, 2022 WL 2080090, at *3 (D. Nev. June 9, 2022) (dismissing Shahrokhi's suit against Family Court Judge Throne, her law clerk, and her judicial assistant based on immunity); *Shahrokhi v. Tao*, 2021 WL 2945534, at *2 (D. Nev. July 6, 2021), *aff'd*, 2022 WL 3644863 (9th Cir. Aug. 24, 2022) (dismissing Shahrokhi's action against the entire Nevada Court of Appeals bench based on judicial immunity); *Shahrokhi v. Hardesty*, 2022 WL 3579410, at *3 (D. Nev. Aug. 18, 2022), appeal dismissed, 2023 WL 2583417 (9th Cir. Jan. 10, 2023) (dismissing Shahrokhi's suit against Nevada Supreme Court Chief Justice Hardesty based on judicial immunity).

[10] *Id.*

[11] ECF No. 151.

[12] ECF No. 152.

[13] ECF No 151 at 6–8.

reason that they lack facts to support them and are instead made up of "conclusions, buzz-words, and catch phrases" that fall short of meeting this court's pleading requirements.[14]  Counsel for Judge Harter moves to dismiss the claims against him based on judicial immunity and the failure to timely replace this late defendant with the proper representative.[15]

Shahrokhi responds with the insults, profanities, and conclusory accusations that typify his filings.  He describes the custody litigation as a conspiracy between Burrow, her sugar daddy boyfriend and the lawyers he hired for Burrow, and the family-court judge "to create jurisdiction out of thin air, create their own laws, participate in all kinds of shenanigans, and violate all the US Constitution in the hope that they could kidnap a minor from Shahrokhi."[16]  He characterizes Standish as "the biggest corrupt family lawyer in town who buys judgments based on his relationships and favors behind closed doors with corrupt judges such as criminal Harter."[17]  He labels all of Standish and Spradling's filings in the custody case as false, fraudulent, and hearsay, and all of the court's orders as unconstitutional and without jurisdiction.[18]  He insists that he should be granted discovery that will "expose these bottom-feeder corrupt lawyers" and awarded fees for having "to defend against this frivolous" anti-SLAPP motion.[19]  And he argues that Judge Harter is not shielded by judicial immunity because his decisions in the custody case were

---

[14] *Id*. at 10–11.

[15] ECF No. 153.

[16] ECF No. 159 at 3 (cleaned up).

[17] *Id*. (cleaned up).

[18] *See generally* ECF No. 159.

[19] *Id*. at 27.

unsupported by the law, making them illegal and "without any statutory or constitutional jurisdiction."[20]

"Harter and his family must now pay," he warns, as "[p]ayback is a MOTHERF*CKER."[21]  He's sent a fresh round of menacing and vulgar emails to Standish, Spradling, and their lawyers to terrorize them for working on this case.[22]  And he promises that I'll be his next target if I'm "really stupid" enough to stand in his way.[23]

## Analysis

### I.    Shahrokhi's claims against Burrow and her lawyers are subject to dismissal under Nevada's anti-SLAPP law.

"SLAPP lawsuits," which stand for strategic lawsuits against public participation, "abuse the judicial process by chilling, intimidating, and punishing individuals for their involvement in public affairs."[24]  To curb these abusive lawsuits, Nevada's legislature adopted anti-SLAPP laws that immunize protected speakers from suit by permitting a defendant to bring a special motion to dismiss an action "brought against a person based upon a good[-]faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern."[25]  This procedural mechanism "filters unmeritorious claims in an effort to

---

[20] ECF No. 162 at 12.

[21] *Id*. at 13.

[22] ECF No. 171-1–171-3 (Shahrokhi emails).

[23] ECF No. 162 at 4.

[24] *John v. Douglas Cnty. Sch. Dist*., 219 P.3d 1276, 1281 (Nev. 2009), superseded by statute on other grounds as stated in *Shapiro v. Welt*, 389 P.3d 262, 266 (Nev. 2017).

[25] Nev. Rev. Stat. § 41.660(1)(a).

protect citizens from costly retaliatory lawsuits arising from their right to free speech under both the Nevada and [f]ederal [c]onstitutions."[26]

Courts deciding motions under Nevada's anti-SLAPP statute follow a two-step, burden-shifting framework.  At the first step, courts "evaluate 'whether the moving party has established, by a preponderance of the evidence,' that" the communication falls into one of the four categories of matters directly connected with an issue of public concern recognized in NRS 41.637 and was truthful or made without knowledge of its falsity.[27]  If the movant prevails at the first step, the burden then shifts to the plaintiff to "demonstrate[] with prima facie evidence a probability of prevailing on the claim."[28]

### A.    Shahrokhi's claims against Burrow, Standish, and Spradling arise from an NRS 41.637-recognized issue of public concern.

The Nevada legislature has identified four categories of activity it deems to be "good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern."[29]  Relevant here is NRS 41.637(3).  It shields from suit good faith "statement[s] made in direct connection with an issue under consideration by a . . . judicial body."[30]  "[I]n order for a statement to be protected under this judicial-body-communication category, it "must (1) relate to the substantive issues in the litigation and (2) be directed to persons having some interest in the litigation."[31]

---

[26] *John*, 219 P.3d at 1282.

[27] *Delucchi v. Songer*, 396 P.3d 826, 833 (Nev. 2017).

[28] *Rosen v. Tarkanian*, 453 P.3d 1220, 1223 (Nev. 2019) (quoting Nev. Rev. Stat. § 41.660(3)(b)).

[29] Nev. Rev. Stat. § 41.637.

[30] Nev. Rev. Stat. § 41.637(3).

[31] *Patin v. Ton Vinh Lee*, 429 P.3d 1248, 1251 (Nev. 2018).

All of Shahrokhi's claims against Burrow, Standish, and Spradling arise from qualifying communications.  The gravamen of this suit is Shahrokhi's family-court, child-custody litigation against Burrow, which began when Burrow "obtained a temporary restraining order against Shahrokhi and the parties filed competing complaints for child custody."[32]  Shahrokhi's claims against Burrow and her attorneys are founded largely on *conclusory* allegations of nefarious motive, improper influence, and conspiracy.  All of the *factual* allegations against them concern statements made to the court in the custody suit and boil down to these:

- Burrow "[a]t all times relevant herein . . . was a party in a case in the family court of Clark County, Nevada[,] known as case no.: D-18-581208-P, and entitled: Kizzy Burrow v. Ali Shahrokhi."  Complaint, ECF No. 1 at ¶ 12.

- This was "high[-]conflict litigation in Nevada's Eighth Judicial District, Family Court concerning the custody of the couple's minor child."  *Id*. at ¶ 27.

- "Throughout the custody dispute," Burrow "continuously, falsely[,] and maliciously alleged that Shahrokhi was physically and mentally abusing her minor and initiated numerous false motions with Family Court, without any evidence, police report, arrest reports, witnesses an [sic] constantly is using Shahrokhi's direct personality to use as character evidence[,] which is in complete violation of rules of evidence, and investigations followed."  *Id*. at ¶ 32.

- "[B]etween 5/13/2019 and 6/26/2019," Burrow and Shahrokhi "both had filed multiple motions, oppositions, [and] counter motions[,] and Harter had vacated and canceled all."  *Id*. at ¶ 34.

---

[32] ECF No. 153-1 at 1 (Supreme Court of Nevada Order of Affirmance).

- As counsel for Burrow in the custody case, Standish "had substantial influence on most of the Case: D-18-581208-P including [f]iling a motions [sic] stating Shahrokhi had harassed his [p]aralegal, [s]igning [affidavits] into the [c]ustody case claiming first[-] hand knowledge, submitting exhibits such as communications with Shahrokhi, making himself a party to the custody case, and giving statements in person on July 11th, 2019[,] as a witness to the Judge 'Harter' . . . ." *Id.* at ¶ 9.

- Spradling, too, was one of Burrow's attorneys in the same custody case "and therefore had substantial influence on most of the Case: D-18-581208-P including [f]iling a motions [sic] stating Shahrokhi has and continues to purchase large amounts of fertilizers, submitting exhibits such as communications with Shahrokhi, making himself a party to the custody case as a witness to Judge 'Harter' . . . ." *Id.* at ¶ 11.

- "On 5/14/2019, Standish filed a opposition [sic] and countermotion boldly asking Harter to DENY Shahrokhi his Trial request and therefore violating Shahrokhi's procedural due process rights." *Id.* at ¶ 35.

- On 6/26/2019, Spradling filed a [sic] Ex-PARTE application into the custody case # D-18-581208-P, asking for issuance of an order to show cause and NEVER filed a certificate of service as required by law and NEVER served Shahrokhi with such application before the Court." *Id.* at ¶ 37.

- Standish, knowing Harter's reputation for denying pro se litigants access to justice, "went for the kill as per say [sic] and secretly filed an EX Parte Application to make such happen without notifying Shahrokhi and providing Shahrokhi a certificate of service mandated by law." *Id.* at ¶ 39.

- On 7/11/2019, Standish, with his client Burrow, "walk[ed] into the Court room 20 minutes before Shahrokhi [wa]s allowed" so they could "participate in a [sic] EX-PARTE communication [with Harter] without Shahrokhi's knowledge or presence." *Id*. at ¶ 43.

- "As a result of" this "conspiracy," Judge Harter "issued an Order for temporary relocation for the minor and no[-]contact order for Thomas Standish and entire Standish law firm ('Void Order'), on July 16th, 2019, and August 6th, 2019. . . ." *Id*. at ¶ 44.

- That "Void Order" grants Burrow "temporary relocation with the minor child, in violation of Plaintiff's Due Process rights." *Id*. at ¶ 48.

Without legitimate debate, all of these challenged communications, based on the way that Shahrokhi has framed and alleged them, squarely qualify as statements made in furtherance of the right to petition and involve communications directly connected with issues under consideration by a judicial body as contemplated by NRS 41.637(3). Each alleged communication directly relates to a substantive issue in this custody battle and was directed to the court or the parties to the litigation. Burrow, Standish, and Spradling have thus shown by a preponderance of the evidence that Shahrokhi's claims against them arise from an NRS 41.637-recognized issue of public concern.[33]

---

[33] Shahrokhi challenges this motion as untimely because the statute requires such special motions to be filed within 60 days of service of the complaint, Nev. Rev. Stat. § 41.660(2), and this renewed one was not. ECF No. 159 at 27. But that deadline may be extended by the court for good cause, and good cause exists here. This special motion was originally filed within the 60-day period, *see* ECF No. 15, but the court denied it without prejudice to refiling when staying this case under *Younger v. Harris*. *See* ECF No. 123. The defendants timely refiled the motion when the stay was lifted. ECF No. 147.

**B.    Burrow, Standish, and Spradling have proven that their challenged communications were truthful.**

The second half of the first-prong of the anti-SLAPP inquiry is whether the movants have proven that their challenged communications were "truthful or . . . made without knowledge of [their] falsehood."[34]  To satisfy this requirement, each moving defendant must prove by a preponderance of the evidence that "the gist of the story, or the portion of the story that carries 'the sting' of the [communication] is true."[35]  "A determination of good faith requires consideration of all of the evidence submitted by the defendant in support of his or her anti-SLAPP motion."[36]

Burrow, Standish, and Spradling have all demonstrated by a preponderance of the evidence that the gist of their challenged communications was truthful.  The factual basis for Shahrokhi's claims against Burrow is that, "[t]hroughout the custody dispute," she "falsely[,] and maliciously alleged that Shahrokhi was physically and mentally abusing her minor and initiated numerous false motions with Family Court, without any evidence, police report, arrest reports, witnesses an [sic] constantly is using [his] direct personality to use as character evidence[,] which is in complete violation of rules of evidence, and investigations followed."[37]  Shahrokhi's protestation that Burrow is "using Shahrokhi's direct personality" as "character evidence" in "violation of rules of evidence" does not state any plausible claim for relief against her, nor does it identify a falsehood.  His allegation that Burrow initiated "numerous false motions with

---

[34] *Rosen*, 453 P.3d at 1223 (citing NRS 41.637); *see also Delucchi,* 396 P.3d at 833.

[35] *Rosen*, 453 P.3d at 1224 (quoting *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 88 n.17 (Nev. 2002)).

[36] *Id*. at 1223.

[37] ECF No. 1 at ¶ 32.

Family Court, without any evidence" is too vague to verify with any specificity. Nevertheless, the record of those proceedings, capable of judicial notice, belies Shahrokhi's characterization. In its Order of Affirmance, the Supreme Court of Nevada referenced "evidence from [Burrow's] prior TPO action," her "testimony, an interview with the minor child, and numerous text message and Our Family Wizard messages between the parties" as just some of the "substantial" evidence Burrow presented in support of her motions.[38] The state's high court also found that the record contained "substantial evidence" of Shahrokhi's "multiple acts of domestic violence against [Burrow], including threats to hit her and burn her clothing, harassing her, and intimating that he knows where she lives" supporting Judge Harter's determination "that giving [Shahrokhi] physical custody would not be in the child's best interest."[39] Burrow has also filed a declaration in which she declares under penalty of perjury that all of her "communications to the Family Court, to" Shahrokhi, and to his attorneys during that custody dispute "were made in good faith in furtherance of" her "custody proceedings against" him.[40] As Shahrokhi has offered no evidence to rebut that representation, it is unrefuted.

　　　　Shahrokhi's complaints about Standish's conduct are nearly all related to litigation strategies and the filing of motions and requests for relief, most of which Shahrokhi characterizes as violations of the rules of court and his constitutional rights—but not untruths. The falsities that Shahrokhi accuses Standish of are statements in motions and in court that "Shahrokhi had harassed" Standish's paralegal[41] and that Standish claimed "first[-]hand knowledge,"

---

[38] ECF No. 153-1 at 7 n. 6.

[39] *Id*. at 7–8.

[40] ECF No. 152-1 at 2, ¶ 4.

[41] ECF No. 1 at ¶ 9.

"submit[ed] exhibits such as communications with Shahrokhi," and gave "statements in person . . . as a witness" during proceedings.[42]

In his declaration in support of this special motion, Standish states under penalty of perjury that all of his "communications to the Family Court, to Mr. Shahrokhi, and to Mr. Shahrokhi's various attorneys during the course of that case were made in good faith in furtherance of" his client Burrow's "family[-]law case."[43]  Shahrokhi offers no evidence to refute Standish's declaration.  Standish elaborates that Shahrokhi had sent Burrow "hundreds of pages of intimidating, threatening, and otherwise inappropriate messages through a messaging system called Our family Wizard," which the family court "had ordered the parties to use."[44]  Those messages gave Judge Harter "reason to be severely concerned";[45] the Supreme Court of Nevada found those messages and other evidence in the record to be unrefuted, "substantial evidence" that Shahrokhi "engaged in multiple acts of domestic violence against [Burrow] . . . ."[46]  In affirming Judge Harter's award of sole physical custody to Burrow, the Supreme Court of Nevada also found that Burrow and her counsel showed "good-faith reasons for the move to Oregon, including . . . her desire to escape [Shahrokhi's] obsessive behavior."[47]

As to Spradling, Shahrokhi's complaints are mainly indictments of his alleged violations of court rules and strategic choices that Shahrokhi characterizes as due-process violations.[48]  He

---

[42] *Id*.

[43] ECF No. 151-2 at 4 (Standish declaration).

[44] *Id*. at 2.

[45] *Id*.

[46] ECF No. 153-1 at 7.

[47] *Id*. at 9.

[48] The Supreme Court of Nevada noted "that the record does not support many of [Shahrokhi's] allegations, including allegations of *ex parte* communications between Judge Harter, [Burrow], and her counsel, allegations that the district court marshals threatened him with violence, or

adds one factual detail: that Spradling filed "motions stating Shahrokhi has and continues to purchase large amounts of fertilizers, submitting exhibits such as communications with Shahrokhi, making himself a party to the custody case as a witness. . . ."[49]   In his declaration in support of this special motion, Spradling provides the same details of the litigation proceedings that Standish does.[50]   And he declares that all of his "communications to the Family Court, to Mr. Shahrokhi, and to Mr. Shahrokhi's various attorneys during the course of that case were made in good faith in furtherance of" his client's "family[-]law case."[51]   Shahrokhi offers no evidence to rebut that assertion.

I find that Burrow, Standish, and Spradling have established by a preponderance of the evidence that their challenged communications were truthful or made without knowledge of their falsity, and thus made in good faith as contemplated by NRS 41.635 et seq.  So the burden shifts to Shahrokhi to "demonstrate[] with prima facie evidence a probability of prevailing on" his claims.[52]

---

allegations that Judge Harter gave legal advice to the parties or counsel throughout the proceedings."  *Id*. at 5 n.3.

[49] ECF No. 1 at ¶ 11.

[50] ECF No. 151-1 at 2–4 (Spradling declaration).

[51] *Id*. at 4.

[52] Nev. Rev. Stat. § 41.660(3)(b).

1

2

**C.    Shahrokhi has no probability of prevailing on his claims against
Burrow or her lawyers.**

3      Shahrokhi cannot satisfy his burden to demonstrate a probability of prevailing on his

4  claims against Burrow and her lawyers because these facts do not state viable claims under the

5  theories he offers or because they are barred by the litigation privilege.[53]

6

7

*1.    The conspiracy-based claims fail for want of an agreement
or shared objective.*

8      Shahrokhi's due-process-violation and common-law conspiracy claims, pled as his first

9  and fourth claims for relief, are not likely to succeed against Burrow, Standish, and Spradling.

10  To state a due-process claim under § 1983, state action is required.[54]  Burrow, Standish, and

11  Spradling are not state actors, so Shahrokhi attempts to tie them to the one state-actor defendant,

12

13

14

---

15  [53] Although Shahrokhi asserts that the filing of this motion gives him an immediate crack at
discovery—which he is certain will "expose" these lawyers' corruption, ECF No. 159 at 2—it

16  doesn't.  To get the chance to conduct discovery during anti-SLAPP proceedings, a plaintiff must
file a Federal Rule of Civil Procedure 56(d)-style affidavit or declaration stating with specificity

17  what discovery is required to respond to the special motion, *see Century Sur. Co. v. Prince*, 782
F. App'x 553, 557 (9th Cir. 2019) (unpublished) (finding that district court did not abuse its

18  discretion when granting a Nevada anti-SLAPP motion without allowing plaintiff to conduct
discovery because the plaintiff did not provide an FRCP 56(d) affidavit or declaration), and

19  Shahrokhi didn't do that.  His citation to the Ninth Circuit's statement in *Planned Parenthood
Fed'n of Am., Inc. v. Ctr. for Med. Progress* that, when a defendant raises "a factual challenge"

20  in an anti-SLAPP motion, "courts must treat the motion . . . as 'a motion for summary judgment,'
triggering discovery," ECF No. 159 at 10 (quoting 890 F.3d 828, 834 (9th Cir.), *amended by* 897

21  F.3d 1224 (9th Cir. 2018)), affords no relief from Rule 56(d).  Plus, the factual challenge that the
*Planned Parenthood* court was referring to was the situation in which the anti-SLAPP movant

22  challenges the sufficiency of the evidence supporting claims, not the sufficiency of the
allegations on the face of the complaint.  *Planned Parenthood*, 890 F.3d at 834–35.  As

23  demonstrated *infra*, the defendants here challenge only the sufficiency of the pleading.

[54] *Chudacoff v. Univ. Med. Ctr. of S. Nevada*, 649 F.3d 1143, 1149 (9th Cir. 2011).

Judge Harter, alleging that the judge acted under color of state law and that the other defendants "acted in concert with" him.[55]

Private individuals can be liable under § 1983 if they conspired or entered joint action with a state actor.[56] A civil-conspiracy claim under Nevada law requires a concerted action with a shared unlawful objective.[57] A conspiracy-based § 1983 due-process claim like Shahrokhi's also requires proof of "'an agreement or meeting of the minds to violate constitutional rights.'"[58] To plead a viable § 1983 claim based on this theory, the plaintiff must specifically identify the shared objective and the acts committed by each defendant in furtherance of the conspiracy.[59] Thus, in *Woodrum v. Woodward County, Oklahoma*, the Ninth Circuit considered whether the father in a custody dispute had sufficiently stated due-process-violation claims against the child's mother and against child-protective-services agencies and employees for their investigation into allegations of abuse.[60] Although the record showed that the mother had "deceived the social

---

[55] ECF No. 1 at ¶¶ 59–60.

[56] *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002).

[57] *Cadle Co. v. Woods & Erickson, LLP*, 345 P.3d 1049, 1052 (Nev. 2015) ("In Nevada . . . civil conspiracy liability may attach where two or more persons undertake some concerted action with the intent to commit an unlawful objective, not necessarily a tort.").

[58] *Id.* (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–41 (9th Cir. 1989)).

[59] *See Olsen v. Idaho Bd. of Med.*, 363 F.3d 916, 919 (9th Cir. 2004); *Woodrum v. Woodward Cty., Okla.*, 866 F.2d 1121, 1126 (9th Cir. 1989) (conclusory allegations of a conspiracy do not support a § 1983 claim). Shahrokhi pleads his due-process claim under § 1983, *see* ECF No. 1 at 15, but relies on 42 U.S.C. § 1985(3) in his opposition to this motion. *See* ECF No. 159 at 25. Section 1985 does not apply to Shahrokhi's due-process-based claims because a cause of action under § 1985(3) requires a showing of some racial or class-based discrimination, and a conspiracy under this section requires "the existence of a conspiracy to deprive the plaintiff of the equal protection of the laws." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1141 (9th Cir. 2000). Shahrokhi has not alleged specific facts to support a conspiracy to deprive him of any qualifying rights.

[60] *Woodrum*, 866 F.2d at 1123.

workers by filing false reports" of abuse, the father "could allege no specific facts to show any agreement between" her and any other defendant.[61]  His "conclusory allegations" that the mother and "social workers conspired d[id] not support a claim for violation of his constitutional rights under § 1983," the court concluded.[62]

Like in *Woodrum*, Shahrokhi's conspiracy-based claims fail because he alleges no specific facts to show an actual agreement between the defendants.  They also fail because he has not alleged facts showing that these individuals had a specific, common objective.  Indeed, his allegations undermine that notion.  He alleges that Burrow took the actions she did because she was alternatively "out to accomplish destroying Shahrokhi . . . personally, psychologically, financially, [and] professionally," or "desperate to move to be closer to her boyfriend."[63]  He alleges that Judge Harter's motive was "to retaliate against Shahrokhi who has challenged all Harter's illegal orders and has served a[n] emergency writ of mandamus . . . on Corrupt Harter,"[64] but also to do a "favor" to protect his "friend" Standish.[65]  And although Shahrokhi repeatedly states that these four defendants "conspired to violate" his constitutional rights,[66] those statements are conclusory and inadequate under Nevada and Ninth Circuit law to state plausible conspiracy-based claims.

---

[61] *Id*. at 1226.

[62] *Id*.

[63] ECF No. 1 at ¶¶ 14, 38.

[64] *Id*. at ¶ 15 (cleaned up).

[65] *Id*. at ¶ 41.

[66] *See, e.g.,* ¶¶ 44, 60, 76–81.

### 2.    *There is no legal duty to support the negligence claim.*

Shahrokhi's second cause of action for negligence cannot succeed against these defendants because he cannot establish the principal element of duty.[67]  As the moving defendants point out, "[w]ith unanimity, the courts have rejected all urgings to find a duty to the client's adversary in litigation."[68]  The Nevada Supreme Court is no exception.  It noted in *Dezzani v. Kern & Associates* that "an attorney providing legal services to a client generally owes no duty to adverse or third parties," so there is a "general presumption that an attorney providing legal services to a client is generally not subject to third-party liability for that representation."[69]  Shahrokhi has identified no fact that would render this general presumption inapplicable here.  Nor has he shown that Nevada imposes on a litigant any duty to her adversary upon which a negligence claim against Burrow can lie.  With no recognizable legal duty to anchor his negligence claim against Burrow or her attorneys, Shahrokhi's negligence claim fails as a matter of law.

### 3.    *Shahrokhi has not pled a viable IIED claim.*

Shahrokhi's final cause of action is for intentional infliction of emotional distress (IIED). He theorizes that Judge Harter's "issuance of the Void Orders and/or conspiring to obtain the Void Orders" and then enforcing those orders "transcends all bounds of decency tolerated in a civilized society."[70]  To establish an IIED claim in Nevada, the plaintiff must show "(1) extreme

---

[67] *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc*., 221 P.3d 1276, 1280 (Nev. 2009) ("It is well established that to prevail on a negligence claim, a plaintiff must establish four elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages.").

[68] Privity of contract—Duty beyond privity of contract—Adversity, 1 Legal Malpractice § 7:16 (2023 ed.).

[69] *Dezzani v. Kern & Assocs., Ltd.*, 412 P.3d 56, 62 (Nev. 2018).

[70] ECF No. 1 at 17.

and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress, and (3) actual or proximate causation."[71]   Although Shahrokhi certainly includes all the conclusory buzzwords that the Nevada Supreme Court has used in describing conduct that gives rise to an IIED claim, this alleged misuse of the courts does not rise to the level of "outrageous conduct beyond the bounds of decency" required under the law,[72] and he has not alleged facts showing that he suffered severe or extreme emotional distress.  Shahrokhi thus has not shown that he is likely to prevail on his IIED claim.[73]

### 4.   The claims are barred by the absolute litigation privilege.

Even if Shahrokhi could state plausible claims based on these facts, he cannot show a probability of prevailing on them because they are barred by Nevada's absolute litigation privilege.  The litigation privilege is a "long-standing common law rule that communications uttered or published in the courts of judicial proceedings are absolutely privileged."[74]  It "immunizes from civil liability communicative acts occurring in the course of judicial proceedings, even if those acts would otherwise be tortious,"[75] and it even shields statements made with knowledge of falsity or malice.[76]

---

[71] *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000).

[72] *Abrams v. Sanson*, 458 P.3d 1062, 1069 (Nev. 2020) (citing *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998)).

[73] The failure of each of these claims against Burrow, Standish, and Spradling also supports the dismissal of these claims under FRCP 12(b)(6).  This is an independent, alternative basis to grant these defendants' motion to dismiss.  *See* ECF No. 151 at 10–11 (arguing alternatively that these claims must be dismissed under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[74] *Circus Circus Hotels v. Witherspoon*, 657 P.2d 101, 104 (Nev. 1983).

[75] *Greenberg Traurig v. Frias Holding Co.*, 331 P.3d 901, 902 (Nev. 2014).

[76] *Jacobs v. Adelson*, 325 P.3d 1282, 1285 (Nev. 2014).

Though the bulk of Nevada jurisprudence addresses the impact of this privilege on defamation claims, and Shahrokhi hasn't pled a defamation claim here, the Ninth Circuit extended the protection to other causes of action in *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*.[77]  In finding that "the Nevada courts would apply the privilege" to claims for breach of the implied covenant of good faith and fair dealing and breach of fiduciary duty, the *Crockett & Myers* court reasoned that that application "advances the Nevada policy of granting 'officers of the court the utmost freedom in their efforts to obtain justice for their clients'" and is consistent with the Nevada courts' recognition "that the scope of the privilege is 'quite broad'" and "should be applied 'liberally.'"[78]  The panel also noted that the extension of the privilege to other claims is consistent with the similar California law, which applies the privilege to "any action except one for malicious prosecution."[79]

The Nevada state courts have since confirmed the *Crockett & Myers* panel's suspicion that Nevada's litigation privilege is, indeed, absolute—and it bars all claims based on communications protected by the privilege.[80]  In an unpublished disposition in *Bullivant Houser Bailey PC (BHB) v. Eighth Judicial District Court*, the Supreme Court of Nevada rejected the plaintiff's argument that the privilege applies only to defamation claims and held that it bars intentional-tort claims, too.  The BHB law firm was retained by Louis Habash to file fraud suits against L.A. Pacific Center, Inc. in Nevada and California.  L.A. Pacific then sued the firm for

---

[77] *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 583 F.3d 1232 (9th Cir. 2009).

[78] *Id*. at 1237 (quoting *Fink v. Oshins*, 49 P.3d  640, 643 (Nev. 2002)).

[79] *Id*. (citing *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587, 594–95 (Cal. 1990)).

[80] *See Bullivant Houser Bailey PC v. Eighth Jud. Dist. Ct*., 2012 WL 1117467 (unpublished) (Nev. 2012); *Blaurock v. Mattice Law Offices*, 131 Nev. 1254, 2015 WL 3540903 (unpublished) (Nev. App. 2015) (affirming entry of summary judgment on claims for slander of title, abuse of process, and civil conspiracy based on the litigation privilege).

1   abuse of process, slander of title, intentional interference with contractual relationship, and

2   intentional interference with prospective advantage, theorizing that the lawyers conspired with

3   their own client to disrupt L.A. Pacific's business venture.[81]

4          The district court granted BHB's anti-SLAPP motion—then reconsidered and vacated the

5   dismissal order—but the Supreme Court of Nevada reinstated it by writ of mandamus.  It

6   reasoned that all of the claims were barred by the litigation privilege because they were based on

7   the lawyers' actions and allegedly nefarious motives in the course of litigation:

8              In this case, the majority of BHB's alleged wrongdoing consists of
               communications made by BHB in its capacity as legal counsel for
9              Habash during the course of litigation.  In LA Pacific's complaint,
               it alleges that BHB filed the Nevada lawsuit and recorded
10             numerous lis pendens for the improper purpose of clouding its title
               and disrupting the sale of the property.  These acts are
11             communications made in the course of litigation that are absolutely
               privileged, and thus, as a matter of law, cannot constitute the basis
12             of LA Pacific's claims against BHB.

13             BHB also allegedly plotted with Habash to retake the property and,
               to that end, generated a research memorandum identifying
14             potential theories upon which Habash could seek rescission of the
               purchase agreement.  BHB also wrote a demand letter on behalf of
15             Habash to LA Pacific feigning ignorance of the 60–month closing
               date.  These actions are plainly communications made in
16             contemplation of litigation and relate to the subject of the
               litigation.  Thus, the communications are covered by the absolute
17             litigation privilege.  All of these communications are protected by
               the absolute litigation privilege even if they were known to be false
18             or made with malicious intent.  Because the absolute litigation
               privilege applies to these communications, all claims based on
19             them are barred.[82]

20

---

21  [81] *Bullivant*, 2012 WL 1117467, at *1.  This court recognizes that *Bullivant* is not binding, but it
    does portend how the Nevada Supreme Court would resolve the instant case.  *See U.S. Bank,*
22  *N.A. v. White Horse Ests. Homeowners Ass'n*, 987 F.3d 858, 863 (9th Cir. 2021) (noting that
    unpublished decisions from the Supreme Court of Nevada "may lend support" to a conclusion as
23  to what" the court "would hold in a published decision").

    [82] *Bullivant*, 2012 WL 1117467, at *3 (internal citations omitted).

Like L.A. Pacific's claims against BHB, Shahrokhi's causes of action against Burrow and her lawyers are all based on "communications made in the course of litigation that are absolutely privileged and thus, as a matter of law, cannot constitute the basis" of his claims against them. Whereas L.A. Pacific theorized that Habash and BHB lied, conspired, and "filed the Nevada lawsuit and recorded numerous lis pendens for the improper purpose of clouding its title and disrupting the sale of the property,"[83] Shahrokhi avers that Burrow, Standish, and Spradling made false, fraudulent, and *ex parte* filings in the course of this family-court action to deprive him of his constitutional rights.[84]  And just like L.A. Pacific's claims, Shahrokhi's are barred by the absolute litigation privilege.  These claims against Burrow, Standish, and Spradling thus must be dismissed under NRS 41.660.[85]

### D.   Shahrokhi's aggressive litigation abuses demonstrate why this action must be dismissed as a SLAPP suit.

As the Supreme Court of Nevada noted recently in *Patin v. Lee*, the anti-SLAPP statute's purpose is to "protect the right of litigants to the utmost freedom of access to the courts without the fear of being harassed subsequently by derivative tort actions."[86]  Shahrokhi has sued not just the mother of his child, who was the opposing litigant in his child-custody case, but the judges,

---

[83] *Id*.

[84] *See generally* ECF No. 1.

[85] The specially moving defendants include a perfunctory request for reasonable costs and attorney fees and "up to $10,000" under NRS 41.670.  ECF No. 163 at 9; *see also* ECF No. 151 at 11 ("In addition, the Court should award Defendants financial relief permitted by NRS § 41.670.").  I deny this request because it is undeveloped and unsupported.  Local Rule 54-14 requires attorneys-fee motions to be accompanied by an attorney affidavit, "[a] reasonable itemization and description of the work performed," and a summary of several categories of information.  They made no effort to provide any of these things or explain what costs, fees, or statutory monetary award they are entitled to.

[86] *Patin*,  429 P.3d at 1252 (quoting *Neville v. Chudacoff*, 73 Cal. Rptr. 3d 383, 391–92 (Cal. Ct. App. 2008)).

1  court staffers, and lawyers who have touched that case.  For those litigation abuses, he has been

2  declared a vexatious litigant in the state and federal court systems.[87]  Since then, the intensity of

3  his harassment of these involved individuals—and the fear instilled as a result of that

4  harassment—has amplified.  As counsel for Burrow's lawyers in this case have explained,

5  Shahrokhi "has exhibited an obsessive level of engagement in communications, as evidenced by

6  six consecutive emails sent within just 31 minutes."[88]  In them, he consistently uses "vulgar, vile,

7  and inappropriate language" reflecting "an ongoing pattern of behavior."[89]  And he only

8  continues to threaten more retaliatory suits, as exemplified by these alarming emails[90]:

**PRIVACY VIOLATION WARNING:**

This has been going on since Septer 23rd, 2020 right after a 3 days trial and you ALL still conspire continue to violate my privacy righst and my sons privacy rights.

Recording my calls and being present in the same room when I speak with my son, is a conspiracy to violate our privacy rights and wiretap violations.

**FRAUD**
I will be filing federal lawsuit against all parties named in this email in next 30 days for FRAUD on the court committed by Burrow, Standish, Spradling, Pearson....... BEST PART OF IT    rooker-feldman will not apply because I am suing lawyers and Burrow and her Faggort dog eating boyfriend........

Standish..I plan on legally destroying you and your two fu ✱ ng ugly looking hooker daughter...Motherf ✱ er you mess with my sons future. I will legally BURN YOURS cock sucker.......be gald I do not restore to violence  but I will LEGALLY FU ✱ NG MURDER YOU IN COURTS BY LEGAL ACTIONS!

f ✱ ng up a lawyer legally in courts is more pleasnat and rewarding that whopping his ass physically :)

January 29, 2023
Ali Shahrokhi
and on behalf of B.E.S., The Minor

---

[87] *See supra* notes 4 and 5.

[88] ECF No. 209 at 4.

[89] *Id*.

[90] ECF No. 209-3 at 3, 10.

1

**Joe Garin**

2

| | |
|---|---|
| **From:** | Ali S <ali ✱ 6@gmail.com> |
| **Sent:** | Friday, May 19, 2023 12:16 PM |
| **To:** | Joe Garin; Thomas J. Standish, Esq. |
| **Cc:** | Philip Spradling |
| **Subject:** | SHAHROKHI v GARIN & LIPSON NEILSON |

3

4

COCK SUCKER BALD HEADED F. ✱ GOT GARIN,

5

THE FIRST THING I'M GONNA FILE INTO THE NINTH CIRCUIT IS TO DISQUALIFY YOU AND
LIPSON NEILSON FOR PRIVACY RIGHTS VIOLATION AND INTRUSION. LETS SEE IF 9TH
CIRCUIT THINK PRIVACY VIOLATION IS A BONE HEAD MOVE OR A CRIME.........

6

7

THEN I'M GONNA SUE YOU AND LIPSON NEILSON COCK CUKER RIGHT IN THE FEDERAL
COURT.

8

IM GONN ALEGALLY SODOMIZE YOUR BALD HEAD IN THE COURTS SO MOTHER F ✱ KER YOU
WILL NEVER VIOLATE ANYONES PRIVACY RIGHTS.

9

YOU ARE ANOTHER F ✱ iGOT JUST LIKE STANDISH F ✱ K FACE...........

10

11

12 When counsel attached these emails to the defendants' filings, Shahrokhi (ironically) moved to

13 strike them as "scandalous," an abuse of "the court's process," and an "unwarranted personal

14 attack[] against" *him*.[91]  And he characterizes these communications as him merely "exercising

15 his constitutionally protected rights of free speech and sharing information."[92]

16

17       Abusive tactics like these are the zenith of harassment that Nevada's anti-SLAPP statute

18 was designed to combat.  This suit must be dismissed under NRS 41.660.

19

20

21

[91] ECF No. 172 at 6–7.

22

[92] *Id*. at 7.  Shahrokhi's request to strike this material under FRCP 12(f) is denied because it is
meritless and because that rule only covers pleadings, which these briefs are not.  And I decline

23 to grant such relief under this court's inherent powers because these emails are squarely relevant
to the anti-SLAPP issues.

**II.    Shahrokhi's claims against Judge Harter are barred by judicial immunity.**

Having granted Burrow and her attorneys' special motion to dismiss, I turn to the remaining defendant Judge Harter's motion to dismiss.[93]  The arguments offered for Judge Harter are that Shahrokhi's claims against him must be dismissed because Shahrokhi failed to timely identify a substitute defendant to take the place of this late jurist under FRCP 25, and regardless, those claims are barred by the doctrine of judicial immunity.  Because I find the judicial-immunity argument dispositive, I don't reach the substitution issue.

Judicial officers are entitled to absolute immunity from civil liability for "acts committed within their judicial jurisdiction."[94]  Although this immunity "covers only those acts [that] are 'judicial' in nature," a judicial officer "will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather he will be subject to liability only when he acted in the clear absence of all jurisdiction."[95]  "Jurisdiction," the Ninth Circuit has warned, "should be broadly construed to effectuate the policies supporting immunity."[96]

Having had similar claims against other judges dismissed based on judicial immunity,[97] Shahrokhi frontloads his complaint with all the right buzzwords.  He states that "Harter acted in absence of any jurisdiction whatsoever in issuing VOID Orders.  Therefore," his "actions are not entitled to judicial immunity."[98]  He makes this same argument in his opposition to Harter's

---

[93] ECF No. 153.

[94] *Pierson v. Ray*, 386 U.S. 547, 554 (1947).

[95] *O'Neil v. City of Lake Oswego*, 642 F.2d 367, 369 (9th Cir. 1981) (citing *Stump v. Sparkman*, 435 U.S. 349, 360–61 (1978) (cleaned up)).

[96] *Ashelman v. Pope*, 793 F.2d 1072, 1076 (9th Cir. 1986).

[97] *See supra* note 9 (collecting cases).

[98] ECF No. 1 at ¶ 1.

motion to dismiss, listing out all of the judicial orders that Judge Harter entered and baldly

characterizing them as "illegal," "without statutory or constitutional jurisdiction," and violations

of his constitutional rights.[99]

But just saying so does not make it so.  The law gives judges great latitude to make

mistakes—even big ones—and remain free from suit under the judicial-immunity doctrine.  So

long as they are not ruling "on matters belonging to categories [that] the law has expressly placed

beyond their purview," such rulings are within their jurisdiction.[100]  Thus, in *Stump v. Sparkman*,

the United States Supreme Court held that a judge's grant of a petition for the sterilization of a

minor, though not specifically authorized by statute and plagued by procedural error, was a

judicial act protected by judicial immunity.[101]  And Ninth Circuit panels have held that:

- "Allegations of conspiracy between judge and prosecutor to predetermine the outcome of a judicial proceeding are insufficient to overcome" judicial immunity.  *Ashelman v. Pope*, 793 F.2d at 1079;

- A judge's act of convicting a defendant of contempt without a statutorily required affidavit was an act "merely in excess of jurisdiction" and not in the clear absence of all jurisdiction that deprived him of judicial immunity.  *O'Neil v. City of Lake Oswego*, 542 F.2d at 369; and

---

[99] ECF No. 162 at 12–13.  Shahrokhi also argues in that opposition that because he has filed an appeal from orders of mine in a separate case, 2:22-cv-1-JAD-VCF, and that appeal remains pending, *see Shahrokhi v. Throne*, 9th Cir. Case No. 22-15978, I am "divested out of jurisdiction" to take any action in the instant case.  ECF No. 162 at 3.  This is an erroneous statement of the law, as neither Shahrokhi's pending appeal, nor his claimed filing of an affidavit of bias or prejudice against me in that appeal, deprives me of jurisdiction in this case.  *See* 28 U.S.C. § 144.

[100] *O'Neil*, 642 F.2d at 370.

[101] *Stump*, 435 U.S. at 359–364.

- Even "grave procedural errors . . . are not enough to deprive" a judge of immunity. *Ashelman,* 793 F.2d at 1077.

Once stripped of the conclusory labels that Shahrokhi ascribes them, all of the acts that form his claims against Judge Harter are plainly "judicial." In Shahrokhi's own words, they were decisions, hearings, orders, or judgments issued or held in Harter's capacity as the family-court judge presiding over a custody dispute.[102] Even Shahrokhi alleges that "at all times relevant," Harter "was a Clark County Judge assigned to handle" that case and "acting under the authority or color of Nevada law."[103] Because judicial immunity protects such acts even if they were performed with malice or in excess of authority or plagued with grave errors, and Shahrokhi has not offered any factual allegations that show that Judge Harter's decisions belonged to categories that the law expressly placed beyond his judicial purview, Shahrokhi's claims against Harter are barred and must be dismissed.

## Conclusion

IT IS THEREFORE ORDERED that the Special Motion to Dismiss **[ECF No. 151] is GRANTED. The claims against Defendants Philip Spradling, Thomas Standish, and Kizzy Burrow are DISMISSED under Nevada's Anti-SLAPP statute, NRS 41.660.**

IT IS FURTHER ORDERED that Defendant Mathew Harter's Motion to Dismiss **[ECF No. 153] is GRANTED. The claims against Defendant Mathew Harter are DISMISSED based on judicial immunity.**

---

[102] *See, e.g.,* ECF No. 1 at ¶ 34 (referencing a minute order); ¶ 36 (complaining of a "VOID ORDER" for temporary relocation and no[-]contact order"); ¶ 40 (referencing another minute order and hearing); ¶ 41 (complaining of denial of motion); *accord id.* at ¶¶ 43–55.

[103] *Id.* at ¶¶ 6–7.

IT IS FURTHER ORDERED that the Motion to Strike Standish and Spradling's Reply in Support of their Special Motion to Dismiss **[ECF No. 172] is DENIED.**

IT IS FURTHER ORDERED that the Nevada Attorney General's Office's motion to withdraw as counsel for the late Judge Mathew Harter **[ECF No. 184] is GRANTED.**

IT IS FURTHER ORDERED that **all remaining motions [ECF Nos. 175, 177, 178, 180, 188, 199, 202, 207, 209] are DENIED as moot,** and the Clerk of Court is directed to **ENTER JUDGMENT accordingly and CLOSE THIS CASE.**

_____
U.S. District Judge Jennifer A. Dorsey
July 14, 2023